## WILLIAM BISHOP *versus* JAMES SHEPHERD.

Where a minor, in the employment of his father, shipped himself, as a seaman in a whale-ship, without his father's consent, and deserted in the course of the voyage without cause, it was *held*, that an action could not be maintained by the father against the *master*, for the services of the minor, as upon an *implied* contract, but that his remedy was against the ship-owner, it appearing that, by the custom in such voyages, forfeited shares enured to the benefit of the ship-owners exclusively.

ASSUMPSIT for the services of Robert Bishop, the plaintiff's minor son, on board the whale-ship Ann Alexander, of New Bedford, of which the defendant was master.

At the trial, before *Putnam* J., it appeared that the minor, being in the plaintiff's service, and living with him, was without his consent or knowledge, received on board the ship; that the son signed the shipping articles; that the defendant

knew that he was under twenty-one years of age, but was probably deceived by a false representation that he had his father's consent to his shipment ; that he performed his duty as one of the crew, for more than three years ; that he left the ship at Talcahuana, on her return voyage ; and that there was a balance due to him, provided his leaving the ship did not amount to a forfeiture thereof.

The defendant objected, that in voyages of this nature, the ship-owner, and not the master, is responsible for the compensation of the crew, and that this action could not be maintained against the defendant.

The jury found that the minor deserted the ship at Talcahuana without intending to return, and that he was not justified in so doing by any ill usage or danger of life and limb. This was received by the judge as a verdict for the defendant.

The plaintiff moved the Court that the verdict should be set aside and a new trial granted.

*Hallett*, for the plaintiff, cited *Eades* v. *Vandeput*, 5 East, 39, note ; *Barney* v. *Coffin*, 3 Pick. 122 ; *Baxter* v. *Rodman*, 3 Pick. 435 ; *Grozier* v. *Atwood*, 4 Pick. 234 ; Dunlap's Adm. Pr. 61 ; Abbott on Shipping, (Story's ed.) 432, 476 ; *Harden* v. *Gordon*, 2 Mason, 541 ; *Wilkinson* v. *Frasier*, 4 Esp. 182 ; *The Frederick*, 5 Rob. Adm. R. 8 ; *Mair* v. *Glennie*, 4 Maule & Selw. 240 ; *Wait* v. *Gibbs*, 4 Pick. 300 ; *Muzzy* v. *Whitney*, 10 Johns. R. 226.

*C. P Curtis, B. R. Curtis* and *T. G. Coffin*, for the defendant.

SHAW C. J. delivered the opinion of the Court. This is an action brought by the plaintiff to recover the wages or earnings of his minor son, for services on board of a whale ship. It was found by the jury, that the son deserted in the course of the voyage, without any excuse or justification on the ground of cruel treatment. By the shipping-articles, such a desertion is declared to be a cause of forfeiture, and if the son were acting *suo jure* under and by force of the contract, it is alleged, that his share would be forfeited, and that the father is bound by the same forfeiture ; or, by the general rule of the maritime law, which declares that all claim for wages are forfeited by desertion.

42

Bishop
*v.*
Shepherd.

Jan. 22d,
1840.

March term
1840.

But we think it hardly necessary to inquire, what would be the rights, either of the seaman himself, or of the father, were either of them claiming upon the express contract. In the late case of *Vent* v. *Osgood*, 19 Pick. 572, in Essex, it was held, that such a contract by a minor, was voidable, that he might avoid it during the voyage by quitting the ship, that being rendered void *ab initio*, he was not bound by the clause of forfeiture, and might recover a *quantum meruit* for his actual services. But the plaintiff claims a reasonable compensation, on the ground, that he is entitled to the earnings and services of his son, the value of which he is entitled to recover, as upon an implied contract; and the question is, if he has such remedy, whether it is against the master or the owners. He is not to be affected by the shipping-paper, because it is an express contract, which, as against him and his rights, the son had no authority to make. The action of the father can only be maintained, as upon an implied contract, founded upon the equitable consideration, that the father was entitled to the earnings and services of his son, that the defendant received those earnings, and had those services, and is bound to account therefor to the plaintiff, and for this duty the law raises an implied promise. That the plaintiff was entitled to the earnings of his son, sufficiently appears by the facts, that the son was a minor under his tutelage, and in his employment, and engaged in this voyage without his consent. As he disaffirms the son's contract, and claims the value of the services, as a debt due directly to himself, he is not bound by its terms, nor affected by its conditions.

We are then brought to the question, who, upon equitable principles, is liable to the plaintiff, as having received the services and earnings of the son, on the whaling voyage in question.

It has often been held that, upon these whaling voyages, carried on under a shipping-paper and form of contract, like that exhibited in the present case, although the officers and seamen, respectively, are to receive a share of the proceeds of the oil and other acquisitions of the ship, as their only compensation, yet they are not partners or part owners of the oil with the owners of the ship, but on the contrary the oil, before

division, is the property of the owners. *Baxter* v. *Rodman,* 3 Pick. 435 ; *Grozier* v. *Atwood,* 4 Pick. 234. The oil in the first instance being the property of the owners, it remains theirs, until some settlement or adjustment. The right of the seaman, if not forfeited or otherwise defeated, is to have the oil sold, and to recover a share of the proceeds, according to the share for which he shipped. But it is understood, that in practice, if an officer or seaman prefers to have his share in oil, specifically, he will be allowed to do so ; but even in this case it is clear that he has no property in the oil, until separation and delivery. It also appears, that in case of forfeiture of any one's share, such share does not go to increase the shares of the other officers and seamen, but such forfeited lay or share is made up in the general division, as if there were no forfeiture, and as the seaman cannot claim it, it remains to the owners, and enures to their ultimate benefit. Hence it follows, that the services done by each seaman, in acquiring and bringing home the cargo of oil, enure directly to the benefit of the owners, and do in no degree benefit the master. Of course the services of the plaintiff's son were services done for the owners and not for the master. We think, therefore, that when the express contract is repudiated, and we are looking at the equitable grounds of claim, upon which to found an implied promise, to determine who shall stand responsible to the plaintiff for the son's services, and when we find, that the owners, and not the master, have received the whole benefit of them, it follows, that they are the persons responsible.

The master has no benefit from the services of the seamen ; he takes nothing but his own share, according to the terms of his engagement, for his own services. The supposed analogy between the case of such a master, and the master of a merchant vessel, fails. In the latter service, the maxim is, that freight is the mother of wages ; and as the master is supposed to employ the vessel, and is entitled to collect and receive the freight, he holds the fund from which wages are to be paid. For this reason, as well as the practice in the merchant's service, for the master to make an express contract with the mariners to pay their wages, they have a right of action against him

personally. But they have also a right of action against the owners, on the ground, that the contract is made for their use, and the services enure to their benefit. And for greater security, they have also a process *in rem* against the vessel, and hence the seaman's well known triple remedy, against master, owners, and shippers.

Whether in the whaling service, the master would be liable for the seaman's share, in the nature of wages, if he were in a condition to sue on the express contract, we give no opinion. This decision goes on the ground, that the father disaffirms the express contract, and sues on an implied promise to pay what he is equitably entitled to have, and that as the owners held the proceeds of the son's earnings, they, and not the master, must be responsible, on an implied promise to the father.